Good morning, Your Honors. Mr. Alexander has two separate appeals, the first seeking to vacate his guilty plea and the second to vacate the restitution order. I hope in this brief period of time to touch on both. Midway through the plea allocution and after the court had completed most of the required Rule 11 policy, the court observed that Mr. Alexander was stumbling and unable to stand. At a point, he refused to eat for three days because he feared that the correction officers would poison his food. He was that paranoid because he was convinced the COs were already retaliating against him because they knew he had spoken to prosecutors about cooperating in another case. Now, it's a medical reality that prolonged fasting can cause hypoglycemia or low blood sugar. And this is consistent with Alexander's symptoms, confusion, shaking, dizziness, blurred vision, nausea. The court was aware of the problem and even expressed concern about Alexander's competency to continue with the plea. But rather than call a halt to the proceedings or even explore in any meaningful way Alexander's mental state, the court attempted to resolve the issue by giving Mr. Alexander a sandwich. After the sandwich and a recess, Alexander's lawyer pushed forward with the plea, telling his client to hang on and telling the court his client was not fine. But the record shows that Alexander was not fine. He was having difficulty formulating answers to the court's questions. He told the court he could not read parts of his plea agreement and was not asked which parts he could or could not read. He never stated affirmatively that he adopted the plea agreement. He fumbled when asked about what he did and he never fully admitted his guilt, saying only that from what he guessed or what he understood certain criminal acts took place. While the specific circumstances of this case are unique, in Yang, Sheetan, and other cases where the court learns defendant has taken medicine, the court has told that the district court must engage in a searching inquiry to determine whether the defendant can competently proceed with the plea. Assuming the defendant is okay is not enough. It's our position that the court in this case fell short. The court had a duty to explore whether Alexander's extreme paranoia affected his overall thinking. Okay, thank you. And whether eating a sandwich alleviated all the symptoms of low blood pressure, symptoms that cloud one's thinking. It's our position that the best thing would have been for the court to halt the proceedings, but a fair minimum. If the court was convinced that Mr. Alexander was refreshed, knowing that he was not in a good mental state for the most important part of the plea proceeding where the Rule of Eleven policy had taken place, the court should have begun the plea allocution anew, re-engaging in its recitation of the rights Mr. Alexander was relinquishing and the factual basis for the plea. I'm going to turn to the untimely order of restitution. At the sentencing, the court said there would be substantial restitution and the judgment said it would be determined within 90 days, but nothing happened for 15 months. The government did not speak and the court did not schedule a hearing within that time period, and the government has not provided any justification for its failure to take any action. It's true that Mrs. Alexander had a fatical hearing many months later, but Mr. Alexander was at that point without trial counsel. He wasn't given notice of the hearing or an opportunity to attend or present his position. The court then determined the amount of restitution and five months later entered an order against Mr. Alexander without notice or without amending his judgment. How was your client prejudiced by the fact that he was not present at the fatical hearing? My client has never had an opportunity to contest the amount of the restitution, and there's two specific things. One, the issue with the cars was a bit complicated as to who is responsible for what, and the government admitted at sentencing that Rachel Alexander was the primary mover in the in the car case. But second, as the court is aware because I put it in the briefs, there's a 2255 pending, and in that 2255 that's alleging ineffectiveness of counsel, the Alexander's district court lawyer has put in an affidavit of an expert who has market value of certain of the cars and has found that if there had been a fatical hearing, loss would have been reduced by over a hundred thousand, maybe more, and that obviously would have affected the amount of restitution. And while this is now pending in a post-conviction proceeding, that cannot substitute for an actual restitution hearing where Mr. Alexander had an opportunity to present his case on the restitution. And this case is nothing like Dolan or Goushak, which this court decided, because in those cases and the other cases we've seen, there's always some sort of notice to the defendants beforehand. There may be a missing of the time period. The missing of the time period hasn't impaired the defendant's rights. The defendant has had a chance, as the court said, Dolan, to mitigate his harm because he knows the amounts of the restitution. Well your argument is that, your argument is, just to make sure I understand it, that at the sentencing there was an acknowledgment there'll be substantial restitution. It'll be calculated after today and an understanding that that was going to be taken up later at the same time as his wife's restitution, but that he never got notice of anything else and so he was completely deprived of the notice and opportunity to be heard as to restitution. Yeah, that's our position with one caveat. The court did not say his restitution would be taken up at the time of Mrs. Alexander's restitution. The court said it would be taken up at the 90 days. Mrs. Alexander sought a number of continuances. I believe she changed counsel at one point, so a lot of months passed where there was nothing done. But yes, he had his independent right to contest the amount of restitution, which is part of the sentence, and anyway you cut it, he never got that right in this case and Dolan and Gusha don't talk about cases where the court simply forgets or the government simply forgets that there's a defendant out there who hasn't had a restitution award imposed against him and hasn't had notice and hasn't had an opportunity to respond. Let's say we disagree with you about the reading of Dolan. I mean, in Dolan, the court says a sentencing court that misses the 90-day deadline retains power to order restitution where the sentencing court made clear prior to the deadline's expiration that it would order restitution, and I understand your read of Dolan, but let's say we assume that the district court had the opportunity to talk about restitution and the district court acted within its discretion to essentially use that memorandum as the basis for going forward and setting the restitution amount. How do you respond? I don't think restitution really came up at the sentencing hearing. I think that's an unfair argument. In fact, when it comes to the matter, remember restitution was not spelled out in the plea agreement. It wasn't spelled out in the PSR, and as a sentencing, the court did not even find an exact amount of loss, finding only that it was over 550,000, so it fell within a certain offense level. I never addressed specifically what restitution would be appropriate as to Mr. Alexander. So he really never had a chance. He did talk about loss in his sentencing memorandum, but restitution wasn't really on the table then, and the government acknowledges as much both in its sentencing papers and I think in its brief before this court. And one other thing I'd like to say about Dolan, I'm sorry, but one other thing I'd like to say about Dolan is one point the court made in that the defendant had an opportunity to mitigate the harm, because when Dolan, though the 90 days was missed, within the 90 days the defendant was given notice of the restitution, and he could have then come forward and said, I disagree, let's schedule the hearing, and instead he conceded that the hearing could be put past the 90 days. I don't think Dolan stands for the proposition that the 90 days can be ignored willy-nilly. I think it stands only for the proposition that it's not jurisdictional and there may be circumstances, and this is not one of them, where it does not act as an absolute bar to imposing a later order of restitution. Thank you. We'll hear from your co-counsel, or from Mr. Stern. Can you hear me? Yes. The government concedes that the issue of restitution needs to be remanded because of the confusion and the inconsistencies in the restitution was to be collected, so I don't want to spend any time on that unless the court has questions, other than to say that over the course of time, three years or so, that that restitution order has been in effect, according to the appellant, $50 a month has been taken from her prison commissary account, and that the remand ought to address what should happen with regard to that money that was taken from her pursuant to an unlawful restitution order, which the government concedes. And I'll move on to the credit card. Are you suggesting a refund? Yes, I am. She has another, she has about a year to go. Excuse me, Judge Wesley, did you ask the district court to, at the district court level, to reconsider the restitution order in light of the, what was the apparent inconsistency in the order, and ultimately the Bureau of Prisons interpretation of it once that became apparent? No, and that's part of our ineffectiveness of counsel argument on that issue. Nothing was done in the district court. May I move on to the... Well, let me ask you a question about remedy. If Mark is right, that he was denied an opportunity for his hearing, and either prejudice becomes irrelevant because it's a substantial right, and there's concern about the effect, the overall effective process concern, you know, what's the remedy? It's certainly... Aren't you jointly and severally liable? Yes, but it's, we're, Rachel... Are you resisting, excuse me, are you resisting a vacature of the order? No, not at all. Okay, so the remedy is vacature of the order? That's correct. Okay, thank you. Okay, with regard to the... Every question is a hostile question, Mr. I beg your pardon? I said that every question is a hostile one. Oh, no, I didn't think it as such, Judge. Sorry. Okay. I'm sorry, you have one more minute of your initial three. Oh, I apologize. That's okay. With regard to the credit card conditions, that was part of the restitution order. The judge said that she couldn't make $500 or more of credit card purchases without permission of the probation department in order to assist in paying the restitution, and the court, the district court said, you will, that condition will prevail until your financial obligations are paid. So it was for the purposes of the restitution, not for the deterrence of her criminal behavior, as the government argues. So according to the guidelines, 5D1.3D2, that condition was unlawful because the judge can only impose such conditions unless the defendant is not in compliance with the restitution orders, because a general, overbroad condition that she can't make credit card purchases without permission of the probation department has no standards by which the probation department should be guided on what purchases can be allowed and what purchases can't be allowed, and it is not reasonably related to the crime that she committed, because the credit card was only a fungible tool in this crime. It was not the gravamen of the offense. The credit card itself that was used to purchase an automobile was not fraudulent. Well, your client admitted to using credit cards in furtherance of the motor vehicle fraud, correct? Yes, but she also drove to the bank so she could be precluded from driving. She used the telephone. She used even the mails more directly, and this court has said in the Pearson case and in the Brown case and in the Peterson case that the conditions of supervised release are not to be imposed without limit based on the essential nature of the crime, so a bank robber who drives, the getaway driver who drives to the bank for a robbery can't be precluded from driving, nor could someone who uses the telephone in the commission of a crime be precluded from using the telephone, because those things were not the essential natures of the criminal behavior. Here, the credit card was merely, as I said, this fungible tool. She could have paid in cash. She could have paid in check, and the court is clear that this was for the purposes of the restitution. There's no standard by which the probation department also could have determined whether a single purchase over $500 was precluded or not. It was totally at the discretion of the probation department and had nothing to do with whether or not she was meeting her restitution obligations. It's only if she wasn't meeting her restitution obligations that such a condition could be operative, and that's how the court should have phrased it. The court should have said that the probation department should have say over these purchases if she were not meeting her restitution obligations, but the court did not say that. She allowed the probation department to make these determinations on her credit card purchases, even if she was meeting her credit card, her restitution obligations. Thank you, Mr. Stern. Thank you. We'll hear from the United States. Thank you, Your Honors. William Miller for the United States. Can you confirm that everyone can hear me? Yes. Thank you, Your Honors. There's five issues in this case. In my three minutes, I'll touch on each one. First, with respect to Mr. Alexander's plea, in accepting Mr. Alexander's change of plea on two different fraud conspiracies, the district court did not commit error, much less plain error, by concluding the defendant was competent to enter a voluntary and knowing plea. In reaching this conclusion, that the defendant understood the proceedings and wanted to proceed, Judge Artisan relied on several touchstones that I've sort of grouped in three areas. First, before and after every break in the proceedings, the defendant himself, this is the judge relying on the defendant's representation himself, repeatedly evinced a desire to proceed. He told the judge on numerous occasions, both before and after the break, that he wanted to go forward. And his actions evinced this spoken intent. And he signed a written plea agreement with a written stipulation of offense conduct that clearly delineated the facts underlying both the post of money order fraud and the car fraud. He completed a written plea petition as pursuant to Judge Artisan's practice, and he listened to and agreed to the government's oral description of the offense conduct. Back in, Judge Artisan also observed the defense counsel's actions. The defense counsel, like the defendant, repeatedly, time and time again, advised the judge throughout the change of the plea proceedings that his client was confident, understood the proceedings, and wanted to move forward and plead guilty. And finally, when I look at the entire record, what jumps out at me reading that plea proceeding again, and probably the most important thing is Judge Artisan herself directly observed and interacted with the defendant through the entire proceedings, both before and after the break. She had the opportunity of observing the entire time, and additionally, she spoke with him directly. There was a direct exchange between the judge and Mr. Alexander. And after the break, in fact, the one observation that was meaningful to me is she said, Mr. Alexander said, I feel fine, I feel refreshed, I want to proceed forward, Your Honor. The defense counsel had said, my client wants to proceed forward, Your Honor. She said, I really didn't have any doubt, Mr. Alexander, that as you told me, your mind was clear. And that's that 84-86 of the record. So this is her observing the defendant. You have one more minute. You have three minutes. Okay. And again, I'll just point out, Mr. Alexander claimed no error in this proceeding. When I look at the restitution issue, it breaks down the two issues for me. One is the 90-day bar that's discussed by Dolan. Another is a due process claim that the appellant's counsel is alluding to. The fact that Judge Arderton did not enter a restitution order 90 days after she imposed the sentence is not a bar. The purpose of the MDRA is to ensure victims receive restitution. Here, Mr. Alexander had clear notice that a mandatory restitution would enter in the case. This was both in the plea agreement, which contained a right-of-way restitution, and was also discussed at sentencing.  no doubt that restitution was not a bar. It's not a bar. It's not a bar.    enforcement requirements and the restitution order that should have been imposed and only left the amount open. The due process claim, it is undisputed that while the record shows government and the defendant's wife and his inconspirator continuously discussing restitution, the record does not reflect that this defendant had adequate notice or had the ability to participate in the FATACO hearing. While this is error, the defendant has to establish his burden of plain error. And when you look at the third element for plain error, it's the prejudice that Your Honor referred to earlier. On the record before you, the only allusions to prejudice are a single footnote in the opening brief and a broad assertion in the reply view, both of which are devoid of meaning. And as we discussed, the defendant is pursuing this exact same claim in a 2255 and should seek redress in that venue. With respect to I don't know how much time I left, but with respect to Rachel Alexander's claims Before you get to Rachel Alexander's claims, as to Mark Alexander, his counsel withdrew with the understanding that the restitution order remained open. And as you say, nothing happens to give him notice and opportunity to be heard as to that issue. I mean, it's almost it is cast into process terms and that is the way we receive it, but it is almost a deprivation of counsel at least as to this claim. So the counsel has said that there is prejudice and that he didn't have an opportunity. He would have said things about the vehicles. Is there really a greater burden than that in a context like this? Your entire argument boils down to prejudice. Do I understand it correctly? That's correct. This could have been handled better and that's my responsibility. I'm responsible for that. But what we're saying is that he doesn't meet the plain error standard because he hasn't shown prejudice. The prejudice breaks into two areas. The loss on the postal case is relatively simple. It is dollar for dollar. If you look at the record, there's a certain amount of postal money that was stolen, a certain amount of cash and that's the loss. The cars are obviously more complicated because the cars have a value and so the restitutive amount of cars is more complicated. But he's never taken the opportunity. He didn't do it after the proceeding. He didn't file a motion for reconsideration purely on the $90,000 issue. He didn't at all allege. It's his fault. Wait a second. It's his fault that his trial counsel didn't get noticed. It's his fault that he didn't file an objection. He takes a timely appeal. It's his fault. I'm not so certain that it's his fault. I would think, counsel, it's your responsibility. You just said it was to ensure that the proper procedures are followed. He was shut out. He was shut out of the hearing. To simply say, well, it would have been that number anyhow. I'm sorry. He's made an assertion that he had something to offer and he was never given the opportunity to offer it. What's your answer to that? Your Honor is obviously correct. My answer is you're correct, Your Honor. It seems to me you ought to be conceding and agreeing to a remand to vacate the order so that he has his day in court. Are you doing that? Are you doing that? I'm asking you. Are you doing that now? If the plain error standard is met, yes. No ifs. You'll find out if in an order or a decision. Are you doing that now, you? The government is relying on his brief. Okay. Fair enough. Could I ask you to address Rachel Alexander's claim about the credit card provision in her supervised release? Certainly, Your Honor. The credit card order was a term of the supervised release and the district court imposition of the requirement is not error and again, certainly not plain error for at least I think three reasons in my mind. First, that condition is related to both the nature and circumstance of the offense. I mean, it's uncontested that the credit card was an important part of the fraud here. That's admitted in her written stipulation of the offense conduct. Second, this term that was imposed by Judge Artin, it's not a bar and I've heard some discussion by the appellant that it was a bar. It's only she needs to seek approval for purchases over $500. It's not like there's a Brown case where it was a drug defendant that was barred. It's not like that at all. And the probation office recommended a $200 cap. Judge Artin on her own raised the $500 and Ms. Alexander can make credit card purchases over $500 just after consulting with the You have one more minute of your total time. Thank you. And then finally, the third is that the consistent this is released. This condition is consistent with the guidelines. There is there's a significant restitution order that is applicable to at least Ms. Alexander. And then in terms of the in terms of her ability to pay back this condition is will facilitate the payment restitution to the victims of Mr. And Mrs. Alexander's crime. So take it anyone. Go ahead and finish Mr. Miller. I apologize. Go ahead. I apologize. So the I just don't want to use but I think when you take them together that this condition cannot simply constitute clean error or abuse of discretion by the district judge. I have a question on remedy both as to if there were if there were relief given the mark and or the relief that you're agreeing to do with regard to Rachel, your opponent says that she should have the mouth that she's already paid restitution refunded. What's your position with regard to that? I you don't have it. I frankly haven't thought about that one. Go ahead. I don't think I think the district court that we left the district court in the remand but I think that the rest is so large. I know that Ms. Alexander has participated in the voluntary financial responsibility program with my understanding. But so I don't think it should be repaid. But I would leave that to the district court and give the district court that option in the remand. Do you agree that if indeed we in some way resonated to the arguments made by Mark that a vacature you can't separate Mark from Rachel, can you? Because the restitution order goes to both. So it would be vacature of the restitution order and there would be if that were the remedy vacature of the order has to be yes to both, doesn't it? In terms of amount. So it can't be differing amounts owed, can there? No. Both defendants pled guilty to two conspiracies and they're jointly and separately liable. So we're saying that it's correct, Your Honor. Yes. Okay. Thank you very much. Thank you, Your Honor. May I just say something quickly in rebuttal, Your Honor? Yes, this is Mr. Stern, but I think Ms. Adelson would Okay. I reserve 30 seconds for rebuttal. Just two quick things I want to say. I really don't understand. I'm baffled by the government's plain error argument with respect to the restitution because plain error occurs when you have sort of waived your opportunity to raise an error in the trial court and there was no opportunity here. It was raised on appeal and that's the only forum that it should have been raised. The second thing I'd like to say very quickly is even if the court was convinced that Mark was fine after he was refreshed, he was more comfortable after he ate the sandwich, that doesn't change the fact that the most important part of the plea allocation, the rule 9 colloquy, took place when the court observed he was near fainting, stumbling, something was wrong, something was wrong with his mind. It was probably due to some kind of hypoglycemia and it would have been a simple matter to just go back and redo the beginning of the plea and make sure he understood exactly and was voluntarily and knowingly waiving the rights that are part and parcel and the critical aspects of the rule 9 colloquy, rule 9. Thank you, Your Honor. Thank you very much. Yes, just very briefly, the credit card condition was part of the restitution order. It was in aid of the restitution order. The court said that plainly. If there is to be remand of the restitution issue, the credit card condition that went along with the restitution should be included and it suffers from the same non, or it benefits from the same non-plain error that the restitution order itself benefits from. There was no there was plain error in the restitution so there was plain error in the condition set for the payment of that restitution. Thank you. Thank you both. Thank you all. Nicely argued and we'll take the matter under advisement. Thank you. Thank you. Thank you.